295 *THOMAS J. FINNEY, guardian, plaintiff in error, *v.* MARY ANN SANFORD, defendant in error.

(Atlanta, June Term, 1870.)

NEW TRIAL—VERDICT CONTRARY TO EVIDENCE—EVIDENCE CONFLICTING.*—In accordance with the repeated rulings of this Court, the Court below has no legal power or authority to set aside the verdict of a jury, on the ground that it is contrary to the evidence, except in cases where the verdict is decidedly and strongly against the weight of the evidence. Where the evidence is contradictory and conflicting, the jury, and not the Court, are the exclusive judges as to the credibility of the witnesses, and as to the weight to which their evidence is entitled, in view of their interest, their relation to the parties, and other circumstances connected with the transaction under investigation. There being no error alleged as to the ruling of the Court in submitting the questions of fact to the jury, and they having found a verdict for the plaintiff, and there being sufficient evidence in the record to sustain, the Court below erred in setting the verdict aside and granting a new trial.

Wife's Separate State. New trial. Before Judge Robinson. Baldwin Superior Court. February Term, 1870.

Finney, as guardian of Emily P. Gibson, sued John W. A. Sanford and Mary Ann Sanford, "his wife, who has a separate estate in her own absolute right," as principals, and T. G. Sanford, as security, upon a promissory note for $1,284 49, made by them as aforesaid, payable to Finney, as such guardian, dated the 9th of February, 1866, and due at five years after date, if the interest be punctually paid annually, but if not then to be due when default is made in paying said

*NEW TRIAL—VERDICT CONTRARY TO EVIDENCE—EVIDENCE CONFLICTING.—"According to the repeated rulings of this court the presiding judge has no legal power or authority to set aside the verdict of the jury on the ground that it is contrary to the evidence and the weight of the evidence, where the evidence is conflicting, unless the verdict is decidedly and strongly against the weight of the evidence. Flournoy *v.* Newton, 8 Ga. 306; Fowler *v.* Waldrip, 10 Ga. 351; Finney *v.* Sanford (41 Ga. 295), decided during the present term. When the evidence is conflicting the jury, and not the court, are the exclusive judges as to the credibility of the witnesses and of the weight of their testimony, and no rule of law having been violated in submitting the facts to the jury in this case, the verdict under the evidence contained in the record is not in our judgment so decidedly and strongly against the weight of the evidence as to authorize the court under the law to set the verdict aside and order a new trial." Sims *v.* Humber, 41 Ga. 211.

ESTOPPEL — RECITALS AND DECLARATION AS EVIDENCE.—"The case of Finney *v.* Sanford, 41 Ga. 301 was a case of estoppel in pais. The plaintiff had acted on the statement of the wife, he had given up a debt of his own on a third person for the note of the husband, on the faith of the statement of the wife that the husband's debt was contracted for the use of the estate of the wife. Upon a clear inspection of that case it will be found also that the majority of the court merely held that the recital, as well as the sayings of Mrs. Sanford, were evidence, not that they estopped her." Dunbar *v.* Mize, 53 Ga. 439.

interest. They failed to pay the interest on the 9th of February, 1868.

Mrs. Sanford pleaded that the consideration of said note was a debt due by her husband to Scott & Caraker, and that she intended simply to sign as security. The other defendants made no defense. The note and Finney's letters of guardianship being in evidence, plaintiff closed. Mrs. Sanford then testified that she signed said note as a security and did it by reason of the persuasion of her husband; that she owned but three or four slaves who worked on the plantation; that her husband had the legal title and ownership of the slaves upon the plantation, being about fifty-six; that the note on which this suit is founded and the note or notes given to Scott & *Caraker were not for debts or obligations against her. John W. A. Sanford testified that he owned about fifty-six slaves, and owned the horses and mules on the plantation; that he cultivated the plantation and disposed of the crops as he thought proper; that the credit given him by Scott & Caraker, running from 1859 to 1863, was given to him individually on their books, and that during those years he owned about fifty-six slaves and a house and lot in Milledgeville; that it was at his request and importunity his wife signed said note, as security as she believed; that "the first note given to Scott & Caraker (and which was the consideration of the note of February 1st, 1866,) at one day for $1,282 00, signed by all of the defendants, was given by him alone and for his individual debt, and then this second note was given to plaintiff, February 9th, 1866, by all the defendants;" that he was insolvent in 1866, when these notes were given, by the results of the war, and that he was not his wife's agent.

Caraker testified that the credit was given to John W. A. Sanford, individually, as shown by his books of entry; that the debt against him, Sanford, and for which Sanford's individual note was given; was made during the years running from 1859 to 1863, and was the consideration of the Finney note sued on.

William McKinley, plaintiff's attorney, was introduced by defendant. He testified that in 1866 plaintiff, as such guardian, held a note on Scott & Caraker for $1,000 00, and gave it to him for collection; that Scott & Caraker were insolvent and proposed to give him, for their note, a note on John W. A. Sanford only; he being insolvent also, McKinley declined the proposed exchange. Scott & Caraker told him that said Sanford's note was for goods and necessaries bought of them by Sanford for the use and maintenance of his wife and her separate estate, consisting of a plantation and numerous slaves. McKinley then proposed to give up their note for $1,200 00, if Mrs. Sanford agreed to their statement as to the consideration of their note on her husband, and would get her son to stand her security, and if they would give a mort-

gage on her life-estate, and her son's remainder *of one-half in the Oconee plantation. McKinley visited Sanford's family, Mrs. Sanford freely admitted the said statement of Scott & Caraker, and said she would give the note and mortgage if easy time for payment was given; he did not see her apart from her husband, but she exhibited no unwillingness to sign the paper; at a second interview he caused the note and mortgage to be drawn up, and they signed the note and mortgage as appears by their faces. He further testified that on the 1st of February, 1866, all of said defendants had agreed upon the nature of said debt as aforesaid, and gave to Scott & Caraker their note for $1,282 00, due at one day after date; Scott & Caraker gave this note to McKinley and he gave them their $1,000 00 note, and then McKinley got the note sued on and the mortgage and gave up said note of the 1st of February, 1866, for $1,282 00 to defendants, and then Scott & Caraker paid McKinley a fee of five per cent. (The sayings of Scott & Caraker) were offered as matter of inducement and not as evidence.) A witness testified that the Sanford plantation belonged to Mrs. Sanford, her father having owned it, that from fifteen to twenty hands worked there, which indicated, say sixty slaves on the place, but said he knew nothing of the title of said slaves.

In rebuttal, plaintiff's counsel read in evidence the said mortgage. It was made on the 9th of February, 1866, to secure said note sued on, was given to plaintiff as such guardian, on said Oconee plantation. It was signed by Mrs. Sanford and her said son, in presence of McKinley and the sheriff of said county. It was in the usual form, except that it contained a recital of the delivery of said note of the 1st of February, 1866, to Scott & Caraker, and its transfer to Finney, and that said note "is founded upon and given for a previously existing debt, principal and interest, due and owing to said firm of Scott & Caraker for staple goods, groceries and merchandise, sold and furnished by them for the use, working and maintenance of the separate estate of the said Mary Ann Sanford, in said county, and for the maintenance and use of herself, her husband, said John W. A. Sanford, being *insolvent, said separate estate of said Mary Ann consisting chiefly of negroes and plantation in said county, which were, at the time of contracting said debt, in actual possession of said Mary Ann, but under the control and constant management of her husband, said John W. A. Sanford, as her agent." Throughout said mortgage Mrs. Sanford was spoken of as a principal to said note sued on.

Plaintiff's counsel also read in evidence the fourth clause of Mrs. Sanford's father's will, by which he gave and bequeathed to his executors, "to be held by them in trust for the sole and separate use of" Mrs. Sanford, "during her natural life, the following property, to-wit": said Oconee

plantation and eighteen named slaves, with their future increase," to her, during her natural life, but subject to the provision and condition contained in the second clause of this my will for the payment of my just debts and legacies, but not transferable in any other way whatever, and never to be under the claim, control or management of John W. Sanford, senior, either by consanguinity, affinity, debt, or otherwise, during her natural life, and at her death" to be divided equally between her two named sons, or their heirs, if the sons be dead. This will was made in 1843 and admitted to record in 1850.

Plaintiff's counsel recalled John W. A. Sanford who testified that, in or about 1851, he and his said wife procured in said Court an order appointing said McKinley as trustee for a large, separate property of said wife; he said the order had been burnt (the Court House was destroyed by fire) and he could not state what property it covered.

The evidence being closed the Court charged the jury, and they found a verdict for the face of the note, against all three defendants. What the charge was does not appear. Mrs. Sanford's counsel moved for a new trial, upon the grounds that the verdict was contrary to the evidence, the law, and the charge of the Court. The Court granted a new trial, and that is assigned as error. It was conceded here, by Mrs. Sanford's counsel, that the effect of the grant was a new trial as to her alone.

*Wm. M. McKinley, by J. D. Pope, for plaintiff in error.

L. E. Bleckley, by the Reporter, for defendant, as to wife's power to bind her estate for her husband's debt, when restricted by the deed of gift, cited Irwin's Code, sections 3301, et seq., 3427; Acts of 1851 and 2, page 237; 12th Ga. R., 199; 9th, 237; 15th, 358; 25th, 652; 32d, 621; and Clark & Grubb v. Valentino, of this Term.

WARNER, J.

The error assigned to the judgment of the Court below in this case, is the granting a new trial on the grounds specified in the motion therefor. There is no error alleged as to the rulings of the Court upon any question of law in submitting the evidence to the jury. The evidence as disclosed by the record, shows that the wife had a separate estate. That a feme covert having a separate estate may contract, and bind that separate estate for goods and family supplies purchased for the benefit of the same, is not now an open question in the Courts of this State: Wyly et al., v. Collins & Company, 9th Georgia Reports, 223; and her admissions if freely and voluntarily made, are competent evidence for that purpose. The wife is a feme sole as to her separate estate, unless controlled by the deed of settlement, or will which creates and conveys it to her. But whilst the wife may contract

Finney v. Sanford

and bind her separate estate as a feme sole, she cannot bind her separate estate by any contract of suretyship, nor by an assumption of the debts of her husband: Code, 1773. The main and controlling question on the trial of this case in the Court below, was whether the goods and family supplies for which the note of the husband was originally given, were, in point of fact, furnished for the use and benefit of the wife's separate estate, or whether the goods and family supplies were purchased by the husband for his own individual use exclusively, and the wife signed the last note merely as surety for her husband's debt only. In regard to this main and controlling question in the case, the evidence is conflicting *and contradictory. If the jury had thought proper to believe the evidence offered on the part of the defendants, and had found a verdict for them, then there would have been sufficient evidence in the record to have sustained that verdict. But as the jury have thought proper to believe the evidence offered on the part of the plaintiff in preference to that offered by the defendants, there is sufficient evidence in the record to sustain their verdict. The whole question depended on the weight and credit which the jury thought proper to give to the evidence before them on this material point in the case. This Court has repeatedly held, that in cases where the evidence is conflicting as to the facts, it will not interfere with the verdict of the jury: Flournoy v. Newton, 8th Georgia Reports, 306; Fowler v. Waldrip, 10th Georgia Reports, 351; and many other cases which might be cited.

In Flournoy v. Newton, Lumpkin, J., in delivering the judgment of the Court, said: "If a new trial is to be granted merely because in the opinion of the Court, the weight of the evidence is on the other side, trial by jury is virtually annihilated, and the Court will be substituted for the jury in every case, in trying the credibility of testimony, and the preponderance of the proof." In Fowler v. Waldrip, Nisbet, J., in delivering the judgment of the Court, said: "We have over and over again refused to award a new trial when there is evidence on both sides, although the strength of the testimony be against the verdict." When the evidence is conflicting and contradictory, the jury, and not the Court, are the exclusive judges as to the credibility of the witnesses, and as to the weight to which their evidence is entitled, in view of their interest, their relation to the parties and other circumstances connected with the transaction under investigation; and the Court has no legal power or authority to interfere with the verdict and set it aside, on the ground that it is contrary to the evidence. It is only in cases where the verdict is decidedly and strongly against the weight of evidence that the Court may exercise a sound discretion under the law, and set aside the verdict of a jury. If the verdict *is decidedly and strongly against the weight

of evidence, so much so, as in the sound discretion of the Court, to make it an illegal verdict, it may be set aside, and a new trial may be granted; but when there is evidence on both sides and that evidence is conflicting and contradictory, the Court has no legal discretion to control and set aside their verdict, and when it does so, it invades the legitimate province of the jury as regulated by law. According to the well established rulings of this Court, the judgment of the Court below setting aside the verdict, and granting a new trial, on the statement of facts contained in the record, was error. Let the judgment of the Court below be reversed.

BROWN, C. J., concurred but wrote no opinion.

McCAY, J., dissenting.

I dissent from the judgment of the majority of the Court in this case. I think a new trial ought to have been granted. I think the verdict of the jury was strongly and decidedly against the weight of evidence. Indeed, I think there was almost no evidence to sustain it, and that the jury acted under an entire misapprehension of the legal effect which ought to be given to the evidence that was before them. It was admitted on all hands that the note sued on was given in lieu and on the taking up of, a note made by Mr. Sanford, the husband. Prima facie, this note, so given by the wife, in place of her husband's note, is, under section 1773 of our Revised Code, void. It falls, therefore, upon the plaintiff in the suit, to show that the original debt was Mrs. Sanford's, and not her husband's, and that the note now sued on, though given apparently in lieu of her husband's debt, was in fact given for her own debt. He proves this thus: The merchants who sold the goods, told Mr. McKinley so. McKinley went to the Sanfords, and the old gentleman said so, and so did the son, and so did Mrs. Sanford. And more, she and her son, by their solemn deed under seal, acknowledged and admitted that the goods had been sold to Sanford for the use of her separate estate. But *what have the statements of the merchants, and of Mr. Sanford and the son, to do with it. They are no evidence at all against Mrs. Sanford. What they said was for their own interest, not under oath, and not admissible as evidence. It was only heard as inducement, part of the res gestæ, and is entitled to no weight as evidence. So, too, of the admission of the son. They bind him, but they are not evidence at all against her. It is said, however, that her admissions are strong and decided, and weigh heavily against her. I think not. It is a settled rule, that the acts of the wife under such circumstances are to be received with suspicion. She is under legal duress, the law suspects the influences of her husband. But here she is doing what is prima facie illegal. The law pre-

sumes her under duress, and as to such contracts declares she shall not bind her separate estate. She is under a disability to assume a debt of her husband; she can no more do it by admitting it to be her own debt than in any other way. Her admissions stand upon the footing of the statement of a drunken man that he is sober, of an insane man that he is sane, or of one under duress that he is free to act. They are worth but little—to give them any weight, is to assume for true the very thing in dispute. If the admissions of the wife are to have weight in a case like this, the statute prohibiting her from assuming her husband's debts is entirely worthless. Since it is very easy for those interested to so manage that the assumption shall be in the shape of such an admission. I have not the least faith in this kind of testimony. My experience is that this statute is a salutary one. And if it is to be got round by having the wife, instead of formally assuming the debt, make an admission that it is her own debt, the provision might as well have been left out of the Code. An improvident husband and a greedy creditor are not to be baffled by a few lines in the Code, when there is blazed out so plain a road around the difficulty.

. For these reasons I dissent in this case. Sanford, Mrs. Sanford, and the merchant who sold the goods, all testify that this was Sanford's debt, and not hers. Sanford says he *was the owner of fifty-six slaves, and of the mules and stock. Mrs. Sanford says but four of her negroes were at work on the place, though the place was hers. Nor is there any proof of what was the character of the goods. Against this array of testimony there is only Mrs. Sanford's admissions, made, as she says, under the pressure and importunity of her husband. It was not entitled to any such weight. The jury mistook the law in such cases, and gave it the effect of an admission as in other cases. This was, in my judgment, wrong, and the verdict ought to be set aside.